

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FRANCISCO JAVIER RIVERA, §
　§
　　　　Petitioner, §
　§
v. § No. 4:17-CV-981-A
　§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
　§
　　　　Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Francisco Javier Rivera, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Factual and Procedural History

In July 2013 petitioner was indicted in Erath County, Texas, Case No. 14013, for aggravated assault with a deadly weapon. (Clerk's R. 4.) The indictment alleged that petitioner intentionally, knowingly, or recklessly caused serious bodily injury to C.S. by burning her pubic region with a deadly weapon,

a heated metal kitchen fork.¹ (Id.) On January 14, 2014, a jury found petitioner guilty of the offense and assessed his punishment at 17 years' confinement and a $5000 fine. (Id. at 33, 38.) Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Sheet 2.) Petitioner also filed two state habeas-corpus applications challenging his conviction. The first was dismissed by the Texas Court of Criminal Appeals because the conviction was not yet final and the second was denied by the Texas Court of Criminal Appeals without written order. (SHR01 Action Taken; SHR02 Action Taken.²) This federal habeas petition followed.

The state appellate court summarized the evidence at trial as follows:

> Virginia Armendariz, a police officer with the Stephenville Police Department, responded to a domestic disturbance call one evening in April 2013. The police department dispatch had received a call from C.S. that she was afraid her husband would beat her. Officer Armendariz went to the address and met C.S. and her young daughter, who lived in a small travel trailer.
>
> C.S.'s husband was not at the trailer when Officer Armendariz arrived. C.S. spoke no English, so Officer Armendariz spoke to her in Spanish and noted that she had several injuries to her body that included bruises on her arms and back; burn marks or scars on her legs,

---

¹The record reflects that petitioner was also charged by separate indictment with other assaultive offenses against C.S. as well as tampering with a witness. (Reporter's R., vol. 2, 5-7.)

²"SHR01" and "SHR02" refer to petitioner's state habeas proceedings in WR-85,681-01 and WR-85,681-02, respectively.

2

inner thighs, and neck; and a "fresh injury" of a
"busted upper lip." C.S. told Officer Armendariz that
the burn marks and scars were from a fork that
[petitioner] had heated to a scorching level and then
applied to C.S.'s skin, particularly on her legs near
her knee and on her inner thighs near her pubic area.
Officer Armendariz located a dinner fork that was
similar in shape and size to the burn marks on C.S.
[Petitioner] returned to the trailer while Officer
Armendariz was still there, so Officer Armendariz
arranged for C.S. to stay at a shelter and contacted
Cross Timbers Family Services, who got her an
appointment at a hospital for a physical examination.

    C.S. lived in Stephenville and had one child, a
daughter; [petitioner] was the child's father. C.S.
testified through the aid of a translator because she
did not speak or write English. C.S. and [petitioner]
met in 2005 and eventually moved in together. In 2009,
they moved to Stephenville and lived together until she
initiated this case in 2013. C.S. testified that,
before she left [petitioner], she called the police
because [petitioner] was angry that she might have lost
some keys. She said that [petitioner] threatened to
beat her, as he had done before, and that she was
afraid because he said it was going to be "really bad"
for her and because he did not "play with those
things." The day before she called the police,
[petitioner] had struck her in the face and injured her
lip.

    C.S. also recounted how [petitioner] was jealous
and how he had burned her with a fork and beaten and
bruised her. [Petitioner] made her completely undress
while he heated the fork in the gas flame from the
stove, and when she tried to avoid the fork, he burned
her with it. C.S. identified the fork from her house
that was similar to the one [petitioner] used to burn
and scar her legs and inner thighs. C.S. also explained
that [petitioner] would not let her go to the doctor
for any burn treatment. C.S. explained that
[petitioner] told her that he burned her so that she
would be "less hot" and not flirt with others.

    Connie Housley, a registered nurse at John Peter
Smith Hospital in Fort Worth, testified that she was a
sexual assault nurse examiner and that she had
performed SANE examinations since 2004. She completed a

3

physical examination of C.S. and treated her injuries. Nurse Housley noted injuries on C.S.'s ankle, legs, arm, neck, and inner thighs near C.S.'s pubic area.

C.S. was recalled to the stand and testified about a conversation she had with [petitioner] while he was in jail. The conversation was recorded, but it was in Spanish. The State offered an English translation transcript of the conversation, and [petitioner] stipulated to its admission. C.S. explained that [petitioner] told her that he would not drink beer anymore, that he was in jail because of the burns, that she made it all up and should drop the charges, that he wanted to get his bond lowered, that he could be in jail for a long time, and that he would miss being with their daughter. C.S. also indicated that [petitioner] told her to say that the burns occurred as a result of consensual activities while they had sex and that he had some on his legs too. C.S. said that the only burns were ones that he had made on her body. C.S. also confirmed that their daughter told [petitioner], when they were at the jail, "Don't hit Mommy anymore, no more."

A.A. was the ex-wife of [petitioner], and she had two children with him. She explained that [petitioner] drank and that he had hit and punched her several times with his fists, but had never burned her. A.A. testified that she had had an awkward encounter with C.S. where C.S. had allegedly followed A.A., and A.A. thought that C.S. had exhibited "[o]dd behavior." A.A. noted that [petitioner] and C.S. lived together while A.A. was still married to [petitioner].

[Petitioner] testified on his own behalf. [Petitioner] admitted that he had a daughter with C.S., that he drank, and that he hit C.S., but he denied that he burned her with a fork. [Petitioner] claimed that she burned herself and that he took her to the doctor for psychiatric problems. [Petitioner] said that he hit C.S. because she slapped him but that he did not hit her very often. According to [petitioner], when he hit her, she had bruises on her thighs, but he never took her to the doctor for those injuries. [Petitioner] admitted that, the day before C.S. called the police, he hit her and "busted" her lip.

4

> [Petitioner] claimed that he sometimes took her to the doctor but that he never took her to get treatment for the burns. [Petitioner] claimed that the burns on his legs were from work, which contradicted an earlier claim that the burns were from sexual activities with C.S. [Petitioner] admitted he did not like C.S. seeing another man whom he believed had "bad intentions"; C.S. was [petitioner]'s woman. [Petitioner] conceded that he told C.S. when she visited him in jail that he would not drink beer anymore and that he told her to tell the lawyer that she was sick and confused and that the burns "excite[d]" them during sex.
>
> [During the punishment phase of trial] Randy Fowler, a detective with the Erath County Sheriff's Office, testified that he had done some simple experiments to see if a fork that had been heated could inflict the burn marks on C.S.'s body. Detective Fowler brought to court a fork similar to the one in evidence, a wax candle, and a small propane torch and heated the fork with the torch. Detective Fowler then touched the fork to the candle, which melted. Detective Fowler also commented that, while the fork's tines were red hot, the fork's handle was not.

(Mem. Op. 2-5.)

## II. Issues

In five grounds, Petitioner raises the following claims for relief:

(1) actual innocence based on insufficient evidence;
(2) trial court error;
(3) prosecutorial misconduct;
(4) ineffective assistance of appellate counsel; and
(5) ineffective assistance of trial counsel.

(Pet. 6-7, 12; Supp. to Pet. 3.) Petitioner's claims are multifarious and somewhat confusing; thus, they are addressed as thoroughly as practical and as construed by the court.

5

## III. Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state-court remedies as to the claims raised and that the petition is not barred by limitations or subject to the successive-petition bar. (Resp't's Answer 7.) 28 U.S.C. §§ 2244(b), (d) & 2254(b)(1)

## IV. Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides

that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004).

**B. Actual Innocence**

Under his first ground, petitioner claims that he is actually innocent of the offense because the state never obtained a "true bill indictment" or jurisdiction over the case and because the evidence was legally and factually insufficient to

7

support his conviction. (Pet. 6; Supp. to Pet. 3.[3])

A stand alone claim of "actual innocence" is itself not an independent ground for habeas-corpus relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006); *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000). The United States Supreme Court reaffirmed in *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013), that it has not resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence. Until that time, such a claim it not cognizable on federal habeas review. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006).

## B. Trial Court Error

Under his second ground, petitioner claims that the trial court erred and abused its discretion in three respects: (1) the "state had no true bill of indictment"; (2) the "court admitted a faulty transcript used against [him]"; and (3) although not on the state's witness list, the court allowed Detective Fowler to testify. (Pet. 6.)

Petitioner claims that the "state had no true bill of indictment" because the indictment was forged and that his

---

[3]Petitioner's supplement to his petition is paginated in Roman numerals; thus, the pagination in the ECF header is used.

prosecution for the offense was the result of a conspiracy among the government, CPS, Erath County, and C.S. Petitioner also appears to claim that he was improperly "arraigned" in front of the jury, although his trial counsel waived reading of the indictment, because "[a]rraignment is not part of trial by jury." (Pet. 6; Pet'r's Mem. 10-16.) The first two claims are conclusory with no legal and/or factual basis in the record. Such claims are insufficient to raise a constitutional issue(s) in a federal habeas proceeding. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

As to the second claim, petitioner appears to confuse a reading of the indictment with arraignment, the latter of which was scheduled for August 5, 2013, but waived. (Clerk's R. 13.) Nevertheless, he fails he show how a customary reading of the indictment followed by a plea of not guilty is trial error.[4] (Reporter's R., vol. 6, 13; Clerk's R. 13.) Under state law, reading of the indictment to the jury is statutorily required. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1) (West 2007). And, the jury received specific instructions that the indictment was not evidence of guilt and should not be considered as such. (Clerk's R. 31.) Juries are presumed to follow a court's instructions. *Woods v. Johnson*, 75 F.3d 1017, 1036 n.29 (5th Cir.

---

[4]The indictment was amended on the state's motion to correct a clerical error. (Clerk's R. 23, 25-26.)

9

1996). The trial court committed no error in this respect.

Petitioner also claims that the trial court erred by admitting the "faulty" transcript of the English translation of his jailhouse conversation and C.S. and by allowing Detective Fowler, who was not on the state's witness list, to testify. (Pet. 6; Pet'r's Mem. 16-20.) Both claims were raised on direct appeal.

The state appellate court found that the first claim was not preserved for appellate review by lack of a contemporaneous objection. (Mem. Op. 8.) Under the procedural-default doctrine, federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Texas's contemporaneous-objection rule is an independent and adequate state procedural bar to federal habeas review. *See Scheanette v. Quarterman*, 482 F.3d 815, 823-24 (5th Cir. 2007); *Amos v. Scott*, 61 F.3d 333, 341 (5th Cir. 1995). Thus, the procedural default in state court precludes federal habeas review of the claim absent a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Ogan v. Cockrell*, 297 F.3d 349, 356 (5th Cir. 2002). Petitioner fails to demonstrate cause for and prejudice attributable to the default or that a fundamental miscarriage of

justice would occur if the court were to refuse to consider his claim. *See Coleman,* 501 U.S. at 750. Therefore, the claim is procedurally barred from this court's review.

The state appellate court, relying solely on state law, addressed the second claim as follows:

> [Petitioner] asserts . . . that the trial court abused its discretion when it allowed Detective Fowler to testify during the punishment phase of trial because Detective Fowler was not listed on the State's witness list. The State called Detective Fowler to provide a demonstration to rebut [petitioner]'s closing argument that it was "impossible" for [petitioner] to hold a heated fork and inflict the injuries on C.S., as C.S. had alleged. The State argued that it had not anticipated [petitioner]'s "impossibility" closing argument. The State also argued that the demonstration reflected on the manner and means of the crime and the cruelty of [petitioner]'s actions.
>
> Defense counsel argued that the evidence was a scientific theory that required an expert witness and that the evidence was an unfair surprise; defense counsel requested a continuance of several days. The trial court ruled that the evidence was more probative than prejudicial as to scienter and state of mind, which are relevant for sentencing. The trial court also ruled that the State's evidence could have been anticipated by defense counsel. The trial court further ruled that the State could call rebuttal witnesses.
>
> Upon request by the defense, notice of the State's witnesses should be given. When the trial court permits a witness to testify even though that witness was not disclosed by the State, the standard of review is whether the trial court abused its discretion. In determining whether there has been an abuse of discretion, we must consider whether (1) the State acted in bad faith in failing to disclose the name of the witness and (2) whether the defendant could have reasonably anticipated that the witness would testify, although his name was not included on the witness list.

[Petitioner] concedes that there has been no allegation of bad faith in this case. He argues, however, that the he could not have anticipated Detective Fowler's testimony. We must consider (1) the degree of surprise to [petitioner], (2) the degree of disadvantage inherent in that surprise, and (3) the degree to which the trial court was able to remedy that surprise.

[Petitioner] testified that C.S. inflicted the burns on herself. [Petitioner] should not have been surprised when the State sought to contradict his closing argument. The State sought to rebut [petitioner]'s closing argument that it was impossible for [petitioner] to have held a heated fork and burned C.S. Although [petitioner] was at a disadvantage because he did not initially know what Detective Fowler would say or do, [petitioner]'s counsel did learn from the State the limited scope of Detective Fowler's demonstration, prior to Detective Fowler's testimony. In addition, [petitioner] had the opportunity to cross-examine Detective Fowler, but he did not. [Petitioner] also never articulated how he was harmed by Detective Fowler's testimony in the punishment phase.

Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure "allows for admission of any evidence the trial court 'deems relevant to sentencing.'" "The Legislature has expressly provided that 'relevant' punishment evidence includes, but is not limited to, both character evidence in the form of opinion testimony as well as extraneous-offense evidence." Because there are no discrete fact issues at the punishment phase of a noncapital trial, the Court of Criminal Appeals has held that the definition of "relevant," under Rule 401 of the Texas Rules of Evidence, does not readily apply to Article 37.07. What is "relevant" to the punishment determination is simply that which will assist the factfinder in deciding the appropriate sentence in a particular case.

Detective Fowler demonstrated with a small propane torch and a metal fork that it was possible to hold a fork, like the one used in the crime, while the fork was heated. Detective Fowler also demonstrated that the

12

> fork could be heated to a point that it would cause
> serious bodily injury if touched to someone's skin. The
> State argued that the time necessary to heat the fork
> showed [petitioner]'s intent to inflict injury on C.S.
> Detective Fowler's demonstration showed the time it
> took to heat the fork and how long it took to cool
> down, which was relevant to [petitioner]'s deliberation
> and state of mind, as well as his cruelty. After a
> review of the record, we cannot say that the trial
> court abused its discretion when it allowed Detective
> Fowler's demonstration and testimony.

(Mem. Op. 5-8.)

Petitioner fails to establish that the state court's decision is contrary to federal law as determined by the United States Supreme Court, and its decision is consistent with Fifth Circuit case law, under which "[t]he omission must result in the defendant's attorney being 'manifestly surprised' before it gives rise to a constitutional defect in the proceedings." *Hardin v. Wainwright*, 678 F.2d 589, 591 (5th Cir. 1982). The state court found that there was no such surprise. Deferring to the state court's factual finding, its decision was not unreasonable in light of the evidence presented in the state court proceedings.

## C. Prosecutorial Misconduct

Under his third ground, petitioner claims that, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution withheld pages one through ten of the SANE nurse's report, having introduced only page eleven depicting a diagram of C.S.'s injuries, and the actual recording of his jailhouse conversation

with C.S. (Pet'r's Mem. 24-26.)

To be entitled to habeas relief on a *Brady* claim, a petitioner must establish that the state suppressed or withheld evidence, which was both favorable and material to the defense. *Strickler v. Green*, 527 U.S. 263, 280 (1999); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The prosecution, however, has no obligation to produce evidence or information that was already known to petitioner. *Moore v. Quarterman*, 534 F.3d 454, 462 (5th Cir. 2008); *Castillo v. Johnson*, 141 F.3d 218, 223 (5th Cir. 1998). Petitioner wholly fails to demonstrate that the state withheld the evidence or that the evidence would have been favorable to his defense. Petitioner was advised by the trial court in a pretrial hearing that Erath County maintains an open-file policy and that his attorney, in essence, would have access to "whatever the state has." (Reporter's R., vol. 2, 8.) It also appears that the defense had access to, and was well aware of, both items. In counsel's affidavit filed in the first state habeas proceeding, counsel stated that he obtained all available evidence in the case, that he met petitioner "in the multipurpose room to show him DVD and CD recorded evidence," and that he "took the English transcription to [petitioner] so that he could review the accuracy of the transcripts." (SHR02 68.) In fact, petitioner himself testified that he knew the jailhouse conversation was

being recorded at the time. (Id. at 91.)

**D. Effective Assistance of Counsel**

Under his fourth and fifth grounds, petitioner claims that he received ineffective assistance of counsel at trial and on appeal. (Pet. 7, 12; Pet'r's Mem. 27-38; Supp. to Pet. 12-13.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1).

*See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state courts adjudicated the ineffective-assistance claims on the merits, this court must review the petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 105.

Petitioner claims that his trial counsel was ineffective by failing to "lodge the proper objection to the faulty and inaccurate translation" of the jailhouse conversation and to request a lesser-included-offense instruction on simple assault. (Pet. 7, 12; Pet'r's Mem. 36-38.) In counsel's affidavit submitted in the state habeas proceedings, he responded to petitioner's allegations, in relevant part, as follows:

> I was appointed to represent [petitioner] on April4, 2013, and contacted him immediately. A copy of my billing invoice is attached to and incorporated into this affidavit. I accept collect calls, and he called me many times and we discussed the case. I made many visits to the jail, sometimes to interview him and sometimes to meet with him in the multipurpose room to show him DVD and CD recorded evidence. I never saw any evidence that he was not competent, and he never gave me any indication that he was not able to comprehend the evidence and communicate his instructions to me.

16

> I obtained all available evidence in the case. I
> arranged for an investigator, and the investigator
> performed services that I requested in preparing the
> case for trial. . . .
>
> The District Attorney's Office prepared an English
> transcription of jail visits by the victim. I took the
> English transcription to [petitioner] so that he could
> review the accuracy of the transcripts.
>
> . . .
>
> We did not want a lesser included offense, as we
> had put on a defensive case that kept the jury out a
> long time. Even after the guilty verdict, I believe
> that we presented a good defense because the punishment
> range was 5-99 and the jury only gave him 14 [sic]
> years. I provided a good defense to the case, as the
> plea offer was 40 years.

(SHR01 64-65.)

Although the state courts made no express findings in this regard, this court can infer that the state habeas court, and in turn the Texas Court of Criminal Appeals, found counsel's affidavit credible, made findings of fact consistent with the affidavit, and determined that the claims were meritless under *Strickland*. Deferring to those implied findings, the state courts' rejection of the claims was a reasonable application of the *Strickland* standard. Petitioner asserts that the transcription is inaccurate and incomplete, however he fails to state, with any level of specificity, in what respects it is

inaccurate or lacking.[5] (Pet'r's Mem. 37.) Furthermore, to demonstrate that his counsel was ineffective, petitioner must identify a legitimate ground on which an objection(s) to the transcription would have been sustained. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). Petitioner fails to do so.

The second issue involves a strategic decision by counsel. Counsel's decision to forego a lesser-included-offense instruction to which his client may otherwise be entitled "dwells in the region of tactics and strategy," because giving such an instruction could increase the chances of conviction on a lesser charge, while foregoing it could decrease the chances of obtaining a complete acquittal. *Mejia v. Davis,* 906 F.3d 307, 316 (5th Cir. 2018). This strategy is known as an "all-or-nothing" strategy. *See Ex parte White,* 160 S.W.3d 46, 55 (Tex. Crim. App. 2004). Counsel's decision to pursue this all-or-nothing strategy was not objectively unreasonable in this case given petitioner's defense that he did not burn C.S. and that C.S. burned herself. (Reporter's R., vol. 7, 85, 91-92.) Therefore, the state courts could have reasonably concluded that counsel made an informed choice to pursue an all-or-nothing strategy and thus the failure to seek a lesser-included offense instruction was not deficient

---

[5]In the transcription there are several references to "can't understand," where the translator could not comprehend what was spoken on the recording. (Reporter's R., vol. 10, State's Ex. 5.)

performance.

Finally, petitioner asserts that his appellate counsel was ineffective by failing to raise one or more of the issues raised in this federal petition. (Pet't's Mem. 27-36.) Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner fails to raise any meritorious claims in this petition. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows that counsel was not ineffective for failing to raise one or more of petitioner's claims on appeal.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not

made a substantial showing of the denial of a constitutional right or that the court's procedural rulings are debatable or wrong.

SIGNED February **8**, 2019.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE